OPINION
{¶ 1} Defendant-appellant, Gloria A. Jelks (hereinafter "Jelks"), appeals the Shelby County Court of Common Pleas judgments overruling her motion to suppress statements made to the police and her motion to dismiss pursuant to Crim. R. 29. For reasons that follow, we affirm.
 {¶ 2} On May 11, 2006, the Gas America station in Sidney, Ohio was robbed by several individuals. The case was assigned to Lt. Jerry Tangeman, a Sidney Police Department Detective. (Jan. 30, 2008 Tr. at 6). During the course of his investigation, Lt. Tangeman contacted Jelks five separate times. On Wednesday, August 22, 2007, Lt. Tangeman contacted Jelks at her residence for the purpose of scheduling an interview with regard to the robbery. (Id. at 8-9). The duration of this contact was approximately two (2) minutes and twenty-seven (27) seconds. (Id.); (State's Ex. 3).
 {¶ 3} On Friday, August 24, 2007, Jelks arrived at the Sidney Police Department for a scheduled interview. Jelks, however, terminated the interview because she did not want to sign a waiver of rights without talking with "her friend." (Id. at 16); (State's Exs. 1, 3). Jelks asked Lt. Tangeman if she could talk to him off the record, but he refused to talk with her unless she signed the waiver. Jelks left the police station without completing the interview. *Page 3 
 {¶ 4} On Wednesday, August 29, 2007, Jelks telephoned Lt. Tangeman and informed him that she had spoken with her friend, subsequently identified as local attorney Kara Blake, and that Ms. Blake could not come to the police department that day due to a scheduling conflict. (Id. at 18).[1]
 {¶ 5} On Wednesday, September 5, 2007, Lt. Tangeman, again, contacted Jelks for the purpose of scheduling an interview. (Id. at 19). During this conversation, Lt. Tangeman informed Jelks that the case was proceeding to the Grand Jury and that he would like to talk with her before that happened. (Id.). Jelks agreed to an interview scheduled for the next day. The conversation lasted approximately two (2) minutes and five (5) seconds. (Id.); (State's Ex. 3).
 {¶ 6} On Thursday, September 6, 2007, Jelks arrived at the Sidney Police Department for the interview. Jelks was advised of her Miranda rights, signed a waiver of those rights, and made incriminating statements admitting to her involvement in the robbery.
 {¶ 7} On October 5, 2007, the Shelby County Grand Jury indicted Jelks on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first degree felony. On January 24, 2008, Jelks filed a motion to suppress the incriminating statements she made to the police during the September 6th interview. On January *Page 4 
20, 2008, a hearing was held on the motion, and on March 6, 2008, the trial court overruled the motion.
 {¶ 8} On April 14, 2008, Jelks filed a Crim. R. 12(C) motion to dismiss alleging that the indictment was defective pursuant to State v.Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917. On April 15, 2008, the trial court overruled the motion. On that same day, Jelks filed a petition to enter a plea of no contest, which the trial court accepted. On June 4, 2008, Jelks was sentenced to eight (8) years imprisonment.
 {¶ 9} On June 10, 2008, Jelks filed her notice of appeal and now asserts two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED, TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT, GLORIA A. JELKS IN OVERRULING HER MOTION TO SUPPRESS, THUS VIOLATING HER RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.
 {¶ 10} In her first assignment of error, Jelks argues that the trial court erred in overruling her motion to suppress the statements she made to the police during her September 6, 2007 interview. Specifically, Jelks argues that her statements were not voluntarily made due to several of Lt. Tangeman's statements, including: (1) that she was not the "big fish" or "big potato" the police were after; (2) that she could lessen the impact of her crime by cooperating; (3) that she could lessen the charges she faced if she talked with him before Grand Jury; and (4) that if she *Page 5 
committed the crimes because of substance abuse, counseling may be available. We disagree.
 {¶ 11} A review of the denial of a motion to suppress involves mixed questions of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses.State v. Carter (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. Burnside, 2003-Ohio-5372, at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. State v. McNamara (1997),124 Ohio App.3d 706, 710, 707 N.E.2d 539.
 {¶ 12} "When the admissibility of a defendant's confession has been challenged, the prosecution bears the burden of proving by a preponderance of the evidence that the confession was voluntary."State v. Hazlett, 3d Dist. No. 8-06-04, 2006-Ohio-6927, ¶ 13, citingState v. Melchior (1978), 56 Ohio St.2d 15, 25, 381 N.E.2d 195; Lego v.Twomey (1971), 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.E.2d 618. In order to determine whether a pretrial statement is involuntary, a court `"should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and *Page 6 
frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."' State v.Brown, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 13, quotingState v. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus. An appellate court must determine whether the totality of the circumstances surrounding the confession indicates that a defendant's "will was overborne and his capacity for self determination was critically impaired because of coercive police conduct." Hazlet, 2006-Ohio-6927, at ¶ 13, citing State v. Otte (1996),74 Ohio St.3d 555, 562, 660 N.E.2d 711; Colorado v. Connelly (1986),479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473; State v. Dailey (1990),53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus.
 {¶ 13} The trial court found that Lt. Tangeman's statement "* ** * you'll have to answer for your part, but you can lessen that," made during the August 24, 2007 interview, did not overcome Jelks' will since she declined to talk without first consulting an attorney. (Mar. 6, 2008 JE at 3-4). The trial court also found that Lt. Tangeman's statement that Jelks' cooperation "could lessen the impact of what you're facing," likewise, did not overborne Jelks' will, because Tangeman also informed Jelks that he did not control the ultimate sentence. (Id. at 4).
 {¶ 14} The trial court, on the other hand, found Lt. Tangeman's September 5, 2007 statement more troubling. Lt. Tangeman told Jelks, "* * * if the case goes to the Grand Jury before I have a chance to talk to you, then we are going to have *Page 7 
to indict you for a higher degree of felony. So, I would much rather talk to you and we can try to work something out for you so that you're not facing as severe of a charge." (Id.); (State's Ex. 3). However, the trial court found that the record consisted of more than this one isolated statement, and that the entire record supported finding that the statements were made freely and voluntarily. (Mar. 6, 2008 JE at 4-5). In support of its determination, the trial court noted that: Lt. Tangeman advised Jelks of her Miranda rights at each interview, though he was not required to do so; Jelks appeared at the interviews by providing her own transportation; the interviews were relatively short and did not demonstrate undue coercion or effort on Lt. Tangeman's part to overcome Jelks' will; and a number of hours passed between Lt. Tangeman's September 5th telephone comments and Jelks' second interview, which was adequate time for her to reflect, consider, and to consult with counsel, if she chose, before making a statement. (Id.).
 {¶ 15} This Court has independently reviewed the entire record in this case and finds that competent, credible evidence supports the trial court's findings of fact. Burnside, 2003-Ohio-5372, at ¶ 8. Furthermore, this Court agrees that the overall record in this case demonstrates that Jelks' will was not overborne by coercive police conduct.Hazlet, 2006-Ohio-6927, at ¶ 13, citations omitted. In addition to the trial court's findings, the record also demonstrates that, at the time of the police interviews, Jelks: was thirty-six (36) years of age; had several prior contacts with law enforcement; could read and write English; was not under the *Page 8 
influence of any drugs or alcohol; and had graduated high school. (Jan. 30, 2008 Tr. at 22-24, 26). Jelks was interviewed only twice. The first interview lasted only fifteen (15) minutes, forty (40) seconds, and the second interview lasted thirty (30) minutes, twenty one (21) seconds. (State's Ex. 3); (Jan. 30, 2008 Tr. at 23). There was no evidence of physical deprivation or mistreatment at any point of the investigation. (Id.); (Id. at 17). Jelks voluntarily transported herself to the police station; the interview room door remained unlocked; Jelks was not placed under arrest but was read her Miranda rights; Jelks demonstrated her ability to remain silent by refusing to sign the waiver of rights during the first interview; and Jelks signed a written waiver of rights before giving her statement. (Id. at 19, 20, 16); (State's Ex. 2).Brown, 2003-Ohio-5059, at ¶ 13, quoting Edwards, 49 Ohio St.2d 31, paragraph two of the syllabus.
 {¶ 16} This Court also finds that Lt. Tangeman's statements, including the Grand Jury remarks, were suggestions of leniency or promises regarding disposition. A suggestion of leniency, however, is not enough to invalidate a confession, but is only one factor to be considered by the court in determining whether the confession was voluntarily made.State v. Wilson (1996), 117 Ohio App.3d 290, 294, 690 N.E.2d 574, citingState v. Cooey (1989), 46 Ohio St.3d 20, 544 N.E.2d 895. "Promises that a defendant's cooperation will be considered in disposition of the case, or that a confession will be helpful, do not invalidate an otherwise legal confession." Id., citing State v. Loza (1994), 71 Ohio St.3d 61, *Page 9 
641 N.E.2d 1082, certiorari denied (1995), 514 U.S. 1120, 115 S.Ct. 1983,131 L.Ed.2d 871. Accordingly, based upon the record in its entirety, this Court concludes that Jelks' police statements were voluntarily made and not coerced by police conduct; and therefore, the trial court did not err in overruling her motion to suppress.
 {¶ 17} Jelks' first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED, TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT-APPELLANT, IN DENYING HER MOTION TO DISMISS, PURSUANT TO OHIO CRIMINAL RULE 29, THUS VIOLATING HER RIGHTS UNDER THE OHIO CONSTITUTION.
 {¶ 18} In her second assignment of error, Jelks argues that the trial court erred in denying her motion to dismiss, because her indictment failed to include the applicable mental state of recklessness pursuant to State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917. The State argues that Colon is inapplicable to the present case because Jelks was charged with an R.C. 2911.01(A)(1) aggravated robbery, which is a strict liability offense. We agree with the State.
 {¶ 19} The Court in Colon found that a defendant's indictment on one count of robbery in violation of R.C. 2911.01(A)(2) was defective, because it failed to include R.C. 2901.21(B)'s catch-all mental element of recklessness for robbery subsection (A)(2)'s actus reas.2008-Ohio-1624, at ¶¶ 2, 11-15. In order to reach *Page 10 
this conclusion, however, the Court first found that robbery under 2911.01(A)(2) did not impose strict liability, because if a statute "does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense." Id. at ¶¶ 11-15, citing R.C. 2901.21(B); State v.Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, ¶¶ 18, 19, 21.
 {¶ 20} In this case, Jelks was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides: "No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" The Ohio Supreme Court has previously found that an (A)(1) aggravated robbery is a strict liability offense.State v. Wharf (1999), 86 Ohio St.3d 375, 378, 715 N.E.2d 172. Therefore, Colon's holding is inapplicable to this case. In addition, the Court of Appeals for the Tenth District has recently addressed this same issue and concluded that Colon does not apply to R.C. 2911.01(A)(1), because an (A)(1) aggravated robbery is a strict liability offense. State v. Ferguson, 10th Dist. No. 07AP-640,2008-Ohio-3827, ¶¶ 37-39; State v. Glover, 10th Dist. No. 07AP-832,2008-Ohio-4255, ¶ 34; State v. Hill, 10th Dist. No. 07AP-889,2008-Ohio-4257, ¶ 35. We agree with the tenth district's conclusion and analysis in these cases. Accordingly, this Court *Page 11 
finds that the case at bar is distinguishable from Colon, because Jelks was indicted on a strict liability offense.
 {¶ 21} Jelks' second assignment of error is, therefore, overruled.
 {¶ 22} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, JJ., concur.
[1] This Court notes that at no time during the investigative process did Jelks retain Ms. Blake as counsel. In fact, Lt. Tangeman testified that he called Ms. Blake to make sure that she was not retained as counsel so that he could properly speak with Jelks without an attorney being present. Ms. Blake indicated that she was not aware of the investigation nor retained by Jelks. (Jan. 30, 2007 Tr. at 36-37). *Page 1